**INTERNATIONAL NUTRITION COMPANY, Appellant,**

v.

**HORPHAG RESEARCH, LTD., Appellee.**

No. 99–1385.

United States Court of Appeals, Federal Circuit.

July 27, 2000.

Norman H. Zivin, Cooper & Dunham LLP, of New York, New York, argued for appellant. With him on the brief was Donna A. Tobin.

Marvin S. Gittes, Cobrin & Gittes, of New York, New York, argued for appellee. With him on the brief was Michael A. Adler.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

International Nutrition Company (INC) appeals from an order of the United States Patent and Trademark Office's Trademark Trial and Appeal Board dismissing INC's petition to cancel a trademark registration held by Horphag Research, Ltd. The Board based its decision on res judicata. Because we conclude that the Board erred in holding that res judicata requires dismissal of the cancellation petition, we vacate the Board's order and remand the case for further proceedings.

## I

This case arose from a dispute over the United States registration of the trademark PYCNOGENOL to designate the source of specific complexes of bioflavonoids, called proanthocyanidins, which are found in extracts of pine bark and other plants. Dr. Jack Masquelier, who has conducted research in the field of proanthocyanidins, has controlled several entities that have distributed and marketed plant extracts for dietary and nutritional supplements, including a French company, Centre d'Experimentation Pharmaceutique (CEP). In January 1989, Dr. Masquelier founded the Societé Civile Pour L'Expansion de la Recherche en Phytochimie Appliquée (SCERPA). SCERPA registered the trademark PYCNOGENOLS in France in March 1989.

Horphag is a distributor of dietary and nutritional supplements in the United States. In 1971, Interhorphag, a company related to Horphag, entered into an agreement to act as an agent for CEP in the sale of products made from plant extracts. Horphag Overseas Limited, Horphag's predecessor, later replaced Interhorphag as CEP's sales agent.

In January 1990, Horphag applied to register the trademark PYCNOGENOL in the United States. The following year, SCERPA filed an opposition to Horphag's application. SCERPA alleged that its predecessor had coined the term PYCNOGENOL and that companies affiliated with SCERPA had continuously used the mark in association with the sale and distribution of dietary and nutritional supplements in the United States since July 1987. SCERPA further alleged that it had informed Horphag, as a distributor for SCERPA, that it had no right to file an application to register the trademark and that SCERPA was the true owner of the trademark. SCERPA further alleged that Horphag knowingly filed a false declaration claiming that it was the owner of the mark.

SCERPA abandoned the opposition before a decision on the merits, and in October 1992, the opposition was dismissed with prejudice for failure to prosecute. Horphag subsequently registered the trademark.

In March 1994, SCERPA assigned the French registration for the mark PYCNOGENOLS (with an "s") to INC. INC also owns the French registration of PYCNOGENOL (without an "s") in its own name. INC subsequently began selling proanthocyanidins in the United States. INC sells its proanthocyanidins in other countries under the trademark PYCNOGENOL. INC cannot use the PYCNOGENOL mark in the United States, however, because Horphag owns the United States registration for the mark.

In August 1997, INC filed the instant petition to cancel Horphag's registration of the PYCNOGENOL mark. INC alleged that it is a worldwide marketer and distributor of nutritional products, that it competes with Horphag, and that it "has an interest in using and registering the mark PYCNOGENOL in the United

States in connection with the sale of its nutritional products." INC further alleged that "Dr. Masquelier and companies controlled by him have granted their rights in the trademark PYCNOGENOL to Petitioner INC and related entities." As grounds for cancellation, INC contended in its first claim for relief that the trademark was fraudulently obtained in contravention of section 14 of the Lanham Act, 15 U.S.C. § 1064. In particular, INC alleged that Horphag or its predecessor falsely claimed to be the owner of the PYCNOGENOL mark, falsely claimed to have manufactured goods bearing the mark, and falsely claimed a first use of the mark in July 1987. In its second claim for relief, INC contended that by registering the mark Horphag violated INC's rights, as the rightful proprietor of the mark, under the International Convention for the Protection of Industrial Property (the Paris Convention).

Before discovery, Horphag moved for summary judgment based on the doctrine of res judicata, arguing that the default judgment against SCERPA in the opposition proceeding barred INC from seeking cancellation of Horphag's registration. As part of its argument, Horphag contended that SCERPA and INC are the same entity. In support of that contention, Horphag asserted that Egbert Schwitters, a director of INC who allegedly had various business relationships with Dr. Masquelier, SCERPA, and other related entities, is the alter ego of both SCERPA and INC. Horphag further asserted that INC was barred from bringing the cancellation action because it is SCERPA's successor to the same property right that was at issue in the opposition. Thus, Horphag argued, INC is bound by the default judgment entered against SCERPA in the opposition.

In response, INC filed a motion requesting further discovery. The Board denied INC's request after concluding that Horphag's motion raised only a question of law: whether INC was precluded from bringing the cancellation action based on res judicata. INC then filed its memorandum on the merits of Horphag's motion.

The Board granted Horphag's motion for summary judgment, concluding that res judicata barred INC from petitioning for cancellation of Horphag's registration. The Board expressly declined to address Horphag's alter-ego argument. Instead, the Board found that INC was a successor in interest to SCERPA. Therefore, the Board concluded, INC and SCERPA must be regarded as the same party for purposes of res judicata analysis. Because the Board concluded that the parties involved in the opposition and the cancellation were the same, and because the Board found that the transactional facts of both proceedings were the same and that a final judgment had previously been entered against SCERPA in the opposition proceeding, the Board held that res judicata barred INC from pursuing its cancellation proceeding as a matter of law. The Board accordingly dismissed the cancellation petition.

## II

On appeal, INC's principal contention is that the Board erred in applying res judicata to this case. Secondarily, INC challenges the Board's denial of its request for discovery.

### A

■ Application of res judicata requires a prior final judgment on the merits by a court or other tribunal of competent jurisdiction; identity of the parties or those in privity with the parties; and a subsequent action based on the same claims that were raised, or could have been raised, in the prior action. *See Amgen, Inc. v. Genetics Inst.*, 98 F.3d 1328, 1331, 40 U.S.P.Q.2d 1524, 1526 (Fed.Cir.1996); *McCandless v. Merit Sys. Protection Bd.*, 996 F.2d 1193, 1197–98 (Fed.Cir.1993).

■ Contrary to INC's argument, default judgments can give rise to res judicata. *See, e.g., Riehle v. Margolies*, 279

U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929); *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1314 (Fed.Cir.1983); *Wells Cargo, Inc. v. Wells Cargo, Inc.,* 606 F.2d 961, 963, 203 U.S.P.Q. 564, 566 (CCPA 1979). INC therefore cannot avoid the bar of res judicata on the ground that SCERPA's opposition was abandoned and dismissed for failure to prosecute. Moreover, for purposes of res judicata, INC's cancellation action and SCERPA's opposition involve the same claim. Both proceedings challenged Horphag's eligibility to register the PYCNOGENOL mark based on alleged false declarations in Horphag's application for registration. To the extent that the cancellation petition expands on the false declaration allegations made in the opposition, the differences between the two pleadings are not sufficient to differentiate the claims for res judicata purposes, particularly since there was nothing in the cancellation petition that could not have been alleged in the opposition. Thus, the only issue in this appeal is whether Horphag has established that INC and SCERPA are the same party or are in privity for purposes of the cancellation proceeding. The Board held that INC and SCERPA were in privity based on a successive property relationship between them, and that is the theory on which Horphag relies in this court.

■ A variety of relationships between two parties can give rise to the conclusion that a nonparty to an action is "in privity" with a party to the action for purposes of the law of judgments, which is simply a shorthand way of saying that the nonparty will be bound by the judgment in that action. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* §§ 4448–62 (1981). One situation in which parties have frequently been held to be in privity is when they hold successive interests in the same property. *See, e.g., Litchfield v. Crane,* 123 U.S. 549, 551, 8 S.Ct. 210, 31 L.Ed. 199 (1887) (defining privity to include a "mutual or successive relationship to the same rights of property"). Thus, a judgment with respect to a particular

property interest may be binding on a third party based on a transfer of the property in issue to the third party after judgment. *See Restatement (Second) of Judgments* § 43 (1982) ("A judgment in an action that determines interests in real or personal property ... [h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself."). A corollary of that principle, however, is that when one party is a successor in interest to another with respect to particular property, the parties are in privity only with respect to an adjudication of rights in the property that was transferred; they are not in privity for other purposes, such as an adjudication of rights in other property that was never transferred between the two. *See* 18 Wright et al., *supra,* § 4462. Put another way, the transfer of a particular piece of property does not have the effect of limiting rights of the transferee that are unrelated to the transferred property. *See Munoz v. County of Imperial,* 667 F.2d 811, 816 (9th Cir.1982) (concluding that non-parties were not in privity with a party to litigation because "[t]he right which the [third parties] seek to litigate is not one which they obtained through contractual relations with [a party to the previous litigation]. It is a completely independent right[.]").

B

■ In finding that INC and SCERPA are in privity, the Board focused on the 1994 assignment of the French trademark for PYCNOGENOLS from SCERPA to INC. The opposition and cancellation proceedings, however, do not in any way involve INC's rights in the French trademark. The French trademark for PYCNOGENOLS was not the subject of SCERPA's opposition to the United States registration of PYCNOGENOL, and it is not the subject of the instant cancellation proceeding. Nor did INC base its right to seek cancellation of Horphag's trademark for PYCNOGENOL on

INC's rights in the related French mark. Instead, INC based its challenge to the registration on its interest in using the mark in the future to market its products. *See* 15 U.S.C. § 1064 ("A petition to cancel a registration of a mark ... may ... be filed ... by any person who believes that he is or will be damaged by the registration of the mark"). Because the cancellation proceeding does not derive from or involve an adjudication of INC's rights in the French trademark for PYCNOGENOLS, the transfer of the rights in that trademark did not render INC in privity with SCERPA for purposes of the opposition and cancellation proceedings at issue in this case.

## C

In addition to its reliance on the conveyed interest in the French trademark, the Board also found that "in the current petition to cancel, INC states that it has rights in the same trademark, through the same chain of title, as SCER-PA asserted [in the opposition]." Without more, however, that finding is an insufficient basis for holding that INC is in privity with SCERPA for purposes of the cancellation proceeding, for two reasons.

First, it is unclear whether, by its reference to "the same chain of title," the Board meant to suggest that INC obtained its rights in the PYCNOGENOL trademark from SCERPA, rather than from one of SCERPA's alleged predecessors. In its cancellation petition, INC did not allege that it succeeded to SCERPA's rights in the trademark, but asserted that it obtained its rights in the trademark PYCNO-GENOL from "Dr. Masquelier and companies controlled by him." In addition, the Board made no finding that any transfer of rights in the trademark occurred after the adverse judgment in the opposition proceeding or while the opposition proceeding was pending. For res judicata to be based on successorship, the Board would have to find that INC obtained its rights in the trademark directly or indirectly from SCERPA and that it did so after the un-

successful opposition was filed. *See* 18 Wright et al., *supra,* § 4462.

Second, even if the Board found that INC obtained its rights in the trademark from SCERPA after the opposition was filed, that would not necessarily be enough to bar INC from seeking cancellation on res judicata grounds. That is because cancellation of a trademark registration can be sought and obtained under section 14 of the Lanham Act even by a party with no proprietary rights in the trademark in issue. *See Ritchie v. Simpson,* 170 F.3d 1092, 1095–96, 50 USPQ2d 1023, 1026 (Fed.Cir.1999); *Books on Tape, Inc. v. Booktape Corp.,* 836 F.2d 519, 520, 5 USPQ2d 1301, 1302 (Fed.Cir.1987). INC therefore may be able to obtain cancellation without having to prove that SCERPA or INC ever had rights in the trademark superior to Horphag's, in which case INC's status as a successor to SCERPA with respect to rights in the trademark PYCNOGENOL would not be relevant to the cancellation proceeding. However, INC's status as a successor to SCERPA with respect to the trademark rights would become pertinent in the cancellation proceeding if INC were to contend that Horphag's claim of ownership of the PYCNOGENOL trademark was false because SCERPA was the true owner of the mark at the time Horphag registered it in the United States. In that event, a finding that INC obtained its rights in the trademark from SCERPA after the unsuccessful opposition would bar INC from seeking cancellation on that theory. *See Restatement (Second) of Judgments* § 43 (1982).

As the foregoing discussion makes clear, we cannot determine at this point whether the origin of INC's rights in the PYCNO-GENOL trademark will affect further proceedings on INC's cancellation petition. We leave it to the Board on remand to make the factual findings and legal conclusions necessary to resolve that question in light of the manner in which INC seeks to establish its right to cancellation.

### D

The Board did not address INC's second claim for relief, under the Paris Convention, nor do we. Even assuming that a private party in INC's position is entitled to seek cancellation based on an alleged violation of the Paris Convention, *see* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29.33 (4th ed.1996), the issues presented by that claim are different from those presented by the first claim for relief, and res judicata principles may apply differently to that claim as well. We leave to the Board the task of deciding, if necessary, whether a party in INC's position may seek cancellation pursuant to the Paris Convention and section 44 of the Lanham Act, 15 U.S.C. § 1126, and if so whether res judicata bars INC from obtaining relief on that claim.

### E

Horphag offers an alternative argument to support the Board's res judicata ruling. Horphag points to a 1990 proxy agreement in which SCERPA gave Mr. Schwitters, his partner, and the company with which they were associated an exclusive license to use and register the PYCNOGENOL trademark in the United States.

We reject Horphag's argument for two reasons. First, the Board made no finding with respect to the 1990 transaction on which a ruling of res judicata could be premised. Second, if Horphag is right in contending that SCERPA transferred its rights to the PYCNOGENOL trademark in the United States as of 1990, SCERPA's subsequent unsuccessful opposition litigation would not have any res judicata effect on INC, since the res judicata effect of a property transfer applies only if the property is transferred either during or after litigation that leads to an adverse ruling with respect to that property. *See Postal Tel. Cable Co. v. City of Newport*, 247 U.S. 464, 475–76, 38 S.Ct. 566, 62 L.Ed. 1215 (1918).

### F

Finally, the Board did not address the other ground for invoking res judicata that Horphag pressed before the Board—that SCERPA and INC are simply alter egos of Mr. Schwitters and for that reason should be regarded as the same party for res judicata purposes. That issue is not before us, and we therefore leave it to the Board to address on remand, if necessary.

### G

With respect to INC's arguments about discovery, we hold that the Board did not abuse its discretion by denying INC's motion at that time, considering that the Board's decision was on the narrow legal ground of res judicata. To the extent that INC's arguments about discovery relate to Horphag's alter-ego theory or other issues that may arise on remand, the Board may consider anew the extent to which discovery on any such issues is appropriate. Accordingly, we vacate the Board's order granting summary judgment in favor of Horphag and remand for further proceedings consistent with this opinion.

*VACATED and REMANDED.*