In re Herbert H. MARTIN Jr., and Barbara S. Martin, Debtors.

No. 07–50100.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

April 13, 2010.

Roland S. Carlton, Jr., Staunton, VA, for Debtors.

Herbert L Beskin, Charlottesville, VA, trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

A hearing was held on November 4, 2009 to consider the Chapter 13 Trustee's Objection to Claim No. 3–2 of Systems & Services Technologies, Inc. After considering the arguments of the parties the Court makes the following findings of fact and conclusions of law.

## Background

The Debtors filed their Chapter 13 bankruptcy petition on February 9, 2007. On the same day the Debtors filed their Chapter 13 plan (hereafter the "Original Plan"). Paragraph 3C of the Original Plan states:[1]

> **Collateral to be surrendered.** Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors allowed claim. *To the extent that collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a non-priority unsecured claim.* The order confirming the plan shall have [the] effect of terminating the automatic stay as to the collateral surrendered.

Paragraph 3C also includes the following table:[2]

| Creditor | Collateral Description | Estimated Total Claim | Full Satisfaction (y/n) |
|---|---|---|---|
| Centrix/Credit Union One | 2004 Nissan Quest | $21,339.20 | Yes |

On March 14, 2007, Credit Union One of Illinois, c/o Flatiron Financial Services, Inc., tka Centrix (hereafter "CU of IL"), filed a proof of claim for a $20,097.55 secured claim, (hereafter the "Claim").[3]

On May 10, 2007, the Debtors filed an Amended Chapter 13 plan (hereafter the "Amended Plan"). The Amended Plan incorporated the language found in paragraph 3C of the Original Plan without modification. On May 11, 2007, the Debtor served notice on all parties informing them of the Amended Plan and related confirmation hearing. On August 29, 2007, the Amended Plan was confirmed without further modification.[4]

On June 30, 2009, Systems and Services Technology Inc.[5] (hereafter "SST") filed an amended proof of claim in the amount of $11,010.80 (hereafter the "Deficiency Claim"). The Deficiency Claim arose from the difference between the value of the 2004 Nissan Quest that served as collateral for the Claim and the funds SST was able to generate from its sale. On September 8, 2009, the Trustee filed an objection to the Deficiency Claim. The Trustee's objection alleges that the Claim had been fully satisfied by surrender of the vehicle and that SST was not entitled to a deficiency claim pursuant to the terms of the plan.

In response to the Trustee's objection SST makes the following arguments: (1) that the denial of a deficiency claim is impermissible; (2) that the specific language of paragraph 3C that permits the filing of a deficiency claim takes precedence over the more general "yes" answer provided in the table; (3) that the plan

---

1. Amended Chapter 13 Plan, *In re Martin*, No. 07–50100 (Bankr.W.D.Va. Feb.9, 2007) (emphasis added).

2. *Id.*

3. The Court notes that the creditor listed in the table found in paragraph 3C of the Original and Amended Plans refers to CU of IL.

4. Pursuant to Fed. R. Bankr.P. 8002(a), CU of IL had 10 days from the date the confirmation order was entered, August 29, 2007, to appeal confirmation. CU of IL failed to do so and the confirmation order became final.

5. A Transfer of Claim Transfer Agreement was filed with the Court on April 17, 2009. The agreement proposed to transfer CU of IL's Claim to SST. On April 22, 2009, notice was sent out to CU of IL giving it twenty days from the date of service to object. No objection was made and pursuant to the terms of the order the transfer became final on May 12, 2009.

violated 11 U.S.C. § 1327 and Fed. R. Bankr.P. 7001(2) and (4) by seeking to determine the validity, priority and extent of a lien without initiating an adversary proceeding; and (4) that the answer "yes" in paragraph 3C's table did not provide sufficient notice that SST's claim would be satisfied in full upon the surrender by the Debtors of the vehicle.

## Discussion

### I. Interpreting a Chapter 13 Plan of Reorganization

In evaluating the issues presented in the case at bar the Court must first determine the meaning of Paragraph 3C of the Amended Plan. In analyzing the provisions of a Chapter 13 plan of reorganization many courts have applied the legal precept that a plan of reorganization is a form of contract that binds the debtor and his creditors. *In re Stuart,* 402 B.R. 111, 126 (Bankr.E.D.Pa.2009).[6] This Court adopts the same legal precept and applies Virginia rules of contract interpretation for purposes of divining the meaning of the plan provisions at issue in this case. *Foothill Capital Corp. v. East Coast Building Supply Corp.,* 259 B.R. 840 (E.D.Va.2001).

Paragraph 3C of the Amended Plan states:[7]

**Collateral to be surrendered.** Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors allowed claim. *To the extent that collat-*

*eral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a non-priority unsecured claim.* The order confirming the plan shall have [the] effect of terminating the automatic stay as to the collateral surrendered.

Directly below this language, (hereafter the "Block Text") Paragraph 3C also includes the following table (hereafter the "Table"):[8]

| Creditor | Collateral Description | Estimated Total Claim | Full Satisfaction (y/n) |
|---|---|---|---|
| Centrix/Credit Union | 2004 Nissan Quest | $21,339.20 | Yes |
| One | | | |

SST argues that the language contained in the Block Text is more specific than the language contained in the Table and therefore the specific language of the Block Text should override the language in the Table.[9] Thus, SST argues, SST is entitled to a deficiency claim regardless of the fact that the Table states that the Claim is to be fully satisfied upon the surrender of the vehicle.

The Court agrees with SST's position that a specific provision in a contract overrides a more general provision that addresses the same issue. *Bott v. N. Snellenburg & Co., Inc.,* 177 Va. 331, 338, 14 S.E.2d 372, 374 (1941). However, the Court finds that the language found in the Table is a specific provision which overrides the language found in the Box Text. The Court bases this conclusion on the

---

6. *See also, In re Harvey,* 213 F.3d 318, 321 (7th Cir.2000), *In re Shenango Group Inc.,* 501 F.3d 338, 344 (3d Cir.2007), *In re Sims,* 358 B.R. 217 (Bankr.E.D.Pa.2006) and *In re Penrod,* 169 B.R. 910 (Bankr.N.D.Ind.1994), aff'd, 50 F.3d 459 (7th Cir.1995).

7. Amended Chapter 13 Plan, *In re Martin,* No. 07–50100 (Bankr.W.D.Va. Feb.9, 2007) (emphasis added).

8. Amended Chapter 13 Plan, *In re Martin,* No. 07–50100 (Bankr.W.D.Va. Feb.9, 2007).

9. SST's Brief Pg. 2, *In re Martin,* No. 07–50100 (Bankr.W.D.Va. Oct.6, 2009).

following findings. It is important to note that the Amended Plan itself is a standard form that is to be used by all Chapter 13 debtors in the Western District of Virginia. *In re Maupin,* 384 B.R. 421 (Bankr. W.D.Va.2007). In its most basic format the form includes the Box Text under which lies a table to be filled in if a debtor desires to surrender a piece of collateral to a creditor. Should a debtor fill out the table in Paragraph 3C, the debtor would have to state whether the creditor's claim would be fully satisfied by the surrender of the underlying collateral. If the debtor chooses to answer the question in the positive then the creditor would not be allowed to claim a deficiency claim and its rights under the Box Text would be modified. Since the language of the Box Text can be modified by the language in the Table, it is clear that the language in the Table is the specific language that modifies and overrides the more general language found in the Box Text. Thus, the Court finds that the language in the Table proposing to surrender the vehicle in full satisfaction of SST's debt overrides the language in the Box Text that grants SST a deficiency claim. Therefore, the Court finds that the language of the Amended Plan bars SST from filing its Deficiency Claim.

## II. Preclusion Pursuant to 11 U.S.C. § 1327

### A. Preclusion Doctrine is Binding Upon Successor in Interest

Before determining if the preclusion doctrine set forth in 11 U.S.C. § 1327 applies to this case the Court must first address whether any preclusion doctrine can apply to SST who was a nonparty at the time the Amended Plan was filed, the confirmation hearing was held and the Confirmation Order was entered.

In this case the party that was present at the time the Confirmation order was issued was CU of IL. As a party at the time of the Confirmation Order, CU of IL is undoubtedly precluded from relitigating the Amended Plan. However, CU of IL transferred the Claim to SST. It is SST who filed the Deficiency Claim and sparked the case at bar. *International Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1329 (Fed.Cir.2000) (internal citations omitted) holds that "A variety of relationships between two parties can give rise to the conclusion that a nonparty to an action is in privity with a party to the action for purposes of the law of judgements, which is simply a shorthand way of saying that the nonparty will be bound by the judgment in that action." One of these relationships occurs when the two parties "hold successive interests in the same property." *Id.* Thus, a nonparty can be held to be in privity with a party to the prior judgment if they succeed in interest to the party's property. *Litchfield v. Crane,* 123 U.S. 549, 551, 8 S.Ct. 210, 31 L.Ed. 199 (1887). In this case, when CU of IL transferred the Claim to SST, SST became a successive interest holder in the Claim. Pursuant to *International Nutrition Co.* and *Litchfield,* the Court finds that SST is in privity with CU of IL and therefore, SST is subject to the preclusion doctrine set forth in § 1327 for all actions related to the Claim.

### B. Applicability of 11 U.S.C. § 1327

11 U.S.C. § 1327(a) states that, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." The effect of § 1327 is that a creditor is precluded from challenging a confirmed Chapter 13 reorganization plan even if the creditor has not objected to, accepted or rejected the plan.

In this case the Amended Plan was filed on May 10, 2007, and was con-

firmed in a Confirmation Order that was entered on August 29, 2007. Fed. R. Bankr.P. 8002 mandates that notice of any appeal of a final order must be filed within 10 days of the entry of the challenged order. In this case the Confirmation Order is a final order and therefore any party wishing to appeal it must have filed notice of appeal within 10 days of August 29, 2007. No appeal was filed and therefore the Confirmation Order became final.

The Court notes that at no point during the period between the day the plan was filed and the day it was confirmed did CU of IL raise an objection to plan. Furthermore, the entry of the Confirmation Order was not appealed by any party. Indeed, it was not until two years after confirmation that SST, as successor in interest to CU of IL, filed the Deficiency Claim here in an attempt to challenge the language and validity of the plan. However, SST is precluded from such a challenge by § 1327(a), which came into force when the Confirmation Order confirming the Amended Plan became final. As such, the Court finds that § 1327(a) bars SST from filing its Deficiency Claim.

■ The preclusion granted by § 1327(a), however, does not apply to a creditor who does not receive notice of the plan such that the creditor's Fifth Amendment right to due process of law is violated.[10] For the following reasons the Court finds that SST was not denied its due process right to adequate notice and therefore, the preclusive effect of § 1327 remains in force.

### C. Exception to Preclusion

#### i. Adequate Notice as Required by Due Process

■ *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct.

652, 94 L.Ed. 865 (1950) holds sets that "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." So paramount is the need to protect the due process rights of parties that the preference in favor of protecting the finality of judgments through the various doctrines of preclusion, such as 11 U.S.C. § 1327, will be suspended in instances where the precluded party was denied its Constitutional right to adequate notice.

#### ii. Adequate Notice in the Case at Bar

##### a. Did the Language of the Amended Plan Give SST Adequate Notice?

■ SST argues that the language of the Amended Plan did not provide enough information regarding the Claim to properly afford CU of IL notice that the Claim would be denied a deficiency claim. The Court, having already addressed the language of the Amended Plan, finds that this argument is untenable for a number of reasons. First, the Court finds that the clear language of this plan contemplates that CU of IL will lose its right to a deficiency claim because the specific language found in Paragraph 3C's Table clearly modifies the language found in the Box Text in such a way that it provides for full satisfaction of CU of IL's claim upon the surrender of the vehicle and therefore denies CU of IL a subsequent deficiency claim.

Secondly, even if the language of the Amended Plan was not clear, the language

---

**10.** U.S. Const. amend. V.

of the Amended Plan indicates that the Claim is subject to some type of treatment. This indication of potential modification in and of itself is enough to provide notice to a creditor that its interests might be affected. Indeed, *In re Basham,* 167 B.R. 903 (Bankr.W.D.Mo.1994), which addressed a situation in which a creditor filed a deficiency claim in spite of clear language in a Chapter 13 reorganization plan prohibiting such a claim, holds that where a creditor had notice that a bankruptcy petition had been filed by a debtor in whom the creditor had an interest and where the creditor was sent a copy of the proposed plan, the creditor had adequate notice that its interest may be modified such that its due process rights were not violated. In this case CU of IL knew that the Debtors had filed for bankruptcy protection and received a copy of the Original Plan, which contained the same language as the Amended Plan, and the Amended Plan. Therefore CU of IL had notice that its claim could be modified and that notice was sufficient to satisfy CU of IL's due process rights.

For the aforementioned reasons the Court finds that the language of the Amended Plan, as well as the Original Plan, provides SST notice that its interest may be modified in some way and therefore had enough information to put it on notice. Thus, the Court finds that the language of the Amended Plan provided adequate notice to SST such that its due process right to notice was not violated.

*b. Was SST Denied Adequate Notice by the Lack of an Adversary Proceeding*

■ SST also argues that notice was improper because the plan calls for a determination on the "validity, priority or extent of a lien or other interest in property" which under 11 U.S.C. § 1327 and Fed. R. Bankr.P. 7001(2) is required to be determined through an adversary proceeding. SST argues that the failure to hold that adversary proceeding deprived it of notice via summons and complaint and therefore, SST was not given proper notice of the proposed treatment of its Claim by the Amended Plan. In evaluating this argument the Court does not decide whether the language of the plan called for a determination on the "validity, priority or extent of a lien or other interest in property" which under 11 U.S.C. § 1327 and Fed. R. Bankr.P. 7001(2) would require an adversary proceeding to be held. Rather, the Court finds that regardless of whether an adversary proceeding was required, SST had adequate notice that it would not be entitled to a deficiency claim under the Amended Plan and therefore is precluded by § 1327 from filing a deficiency claim now.

*In re Linkous,* 990 F.2d 160 (4th Cir. 1993) addressed a situation in which a Chapter 13 debtor's plan proposed to revalue a creditor's interest pursuant to 11 U.S.C. § 506(a) but the debtor failed to file an adversary proceeding. The debtor's plan was subsequently confirmed and no appeal was made. The creditor, post-confirmation and outside the time period for filing an appeal, challenged the order confirming the plan by filing a Motion to Revoke Order Confirming Plan. The debtor responded to the creditor's motion by arguing that the doctrine of res judicata precluded the creditor from challenging the confirmation order. *Linkous* held that the failure to file an adversary proceeding resulted in the failure to issue notice and summons to the creditor which in turn deprived the creditor of adequate notice in violation of its due process rights. Accordingly, *Linkous* found that the creditor was not precluded from challenging the confirmation order since it never received notice of the plan as required by the Constitution.

The ruling in *Linkous,* however, preceded the ruling made in *United Student Aid Funds, Inc. v. Espinosa,* — U.S. —, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). *Espinosa* addressed a factual scenario in which a Chapter 13 debtor proposed a plan which provided that only the principal of the debtor's student loans would be repaid. The debtor did not initiate an adversary proceeding to determine the dischargeability of his student loans. The plan was sent to all creditors. No creditor objected to the plan and the plan was confirmed with no appeal made on the order confirming the plan. After confirmation, the creditor who made the student loans challenged the confirmed plan under Fed.R.Civ.P. 60(b)(4) on the basis that the confirmation order was void because the creditor did not receive actual notice of the proposed treatment of the student loan and this lack of notice violated the creditor's due process rights stated in *Mullane.* Specifically, the creditor argued that 11 U.S.C. § 523(a)(8), 11 U.S.C. § 1328(a)(2), Fed. R. Bankr.P. 7003, 7004 and 7008 require an adversary proceeding to be held in order for a discharge of student loans to be granted. The creditor asserted that because there was no adversary proceeding, the creditor did not receive notice through a summons and complaint and therefore its due process right to notice was violated.

The Supreme Court observed that the creditor was owed an adversary proceeding to determine the dischargeability of a student loan and could have timely objected to the failure to hold an adversary proceeding and appealed an adverse ruling on its objection. *Espinosa,* 130 S.Ct. at 1378–79. The creditor did neither. *Id.* The Supreme Court held that the lack of an adversary proceeding and its related summons and notice, "did not amount to a violation of [the creditor's] constitutional right to due process." *Id.* In reaching this conclusion the Supreme Court found that

the due process right to notice, as stated in *Mullane,* does not require actual notice but merely notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane,* 339 U.S. 306 at 314, 70 S.Ct. 652). Since actual notice of an adversary proceeding through summons and complaint is not required, the Supreme Court held that the fact that the creditor received actual notice of the filing of the debtor's petition and a copy of the plan "more than satisfied [the creditor's] due process rights." *Id.*

The Supreme Court's ruling in *Espinosa,* stating that a failure to hold an adversary proceeding and serve notice through summons and complaint did not deprive a creditor of adequate notice that its interest will be adversely affected, appears to trump *Linkous,* which held that the failure to file an adversary proceeding and serve the requisite summons and complaint deprived a creditor of adequate notice. Therefore this Court holds that *Espinosa* controls on the issue of adequacy of notice for purposes of preclusion in this case.

Having held that the ruling in *Espinosa* controls, the Court now applies *Espinosa* to the facts in the case at bar. As stated earlier, the Court does not need to determine whether the Amended Plan sought to determine the "validity, priority or extent of a lien or other interest in property." Assuming, *in arguendo,* that the plan did seek to make such a determination the Court concludes that the failure to hold an adversary proceeding did not deprive CU of IL of its due process right to adequate notice.

In reaching this conclusion the Court finds that, CU of IL was served notice of the Amended Plan and of the Debtor's Chapter 13 petition. Under *Espinosa* service of these two documents is sufficient to

satisfy CU of IL's due process right to notice.[11] Thus, the Court finds that, for due process purposes, CU of IL was given adequate notice of the contents of the Amended Plan and was on sufficient notice that its interest may be modified. With such notice CU of IL could have filed an objection to the Amended Plan or timely filed an appeal of the confirmation order. CU of IL chose to do neither.

### III. Conclusion

■ The Court concludes that pursuant to *Basham* and *Espinosa,* CU of IL's due process right to notice was satisfied. Thus, under § 1327(a) the provisions of the confirmed Amended Plan bind creditors. CU of IL is barred from relitigating the Amended Plan by filing a deficiency claim where no right to do so existed in the language of the Amended Plan. As previously determined, SST, as the successor in interest to CU of IL, is bound by the decisions of CU of IL and therefore is precluded from filing its Deficiency Claim.[12]

Accordingly it is,

**ORDERED:**

That the Trustee's Objection to Claim # 3–2 of System and Services Technology Inc. is hereby **SUSTAINED.**

---

11. In addition to notice of the Amended Plan and the Debtor's petition, the Court notes that CU of IL was also served notice of the Original Plan which contained identical language in paragraph 3C as that found in the Amended Plan.

12. SST also argues that *Tidewater Finance Co. v. Kenney,* 531 F.3d 312 (4th Cir.2008) holds that denying a deficiency claim is impermissible and therefore the Amended Plan and the related Confirmation Order were granted in violation of standing precedent to the contrary. However, the Court finds that at the time the Amended Plan was confirmed *Tidewater* had not been decided and therefore was not binding precedent on the confirmation proceedings. Furthermore, subsequent case law will not reopen final judgments decided prior to the decision in question. *See In re Richardson,* 27 B.R. 560 (E.D.Pa.1982) and *In re Otero Mills, Inc.,* 21 B.R. 645 (Bankr. D.N.M.1982). Therefore, the Court finds that *Tidewater* has no effect on the matter before the Court.