Reyna, Circuit Judge, dissenting.
In this appeal, the court for the first time defines the legal standard for establishing "privity" under 35 U.S.C. § 315(b). The majority concludes that to establish privity, a petitioner must have had control over the prior district court litigation. This narrow standard will make it difficult for a patentee to successfully assert § 315(b). I believe that control of a prior litigation is but one form of privity. Privity may exist in other forms that do not involve control over the prior litigation, all of which are excluded under the standard adopted by the majority. I respectfully dissent.
This court recently ruled en banc that § 315(b) time bar determinations by the Patent Trial and Appeal Board ("Board") in inter partes review ("IPR") proceedings are appealable. Wi-Fi One, LLC v. Broadcom Corp. , 878 F.3d 1364, 1375 (Fed. Cir. 2018) (en banc). Following that ruling, the court remanded these three consolidated cases to this panel to consider the merits of Wi-Fi One, LLC's ("Wi-Fi") appeal of whether Broadcom Corporation's ("Broadcom") petition is time barred, and whether Wi-Fi is entitled to additional discovery on the § 315(b) issue.
The majority affirms the Board's decision that Broadcom's petition is not time barred under § 315(b). The majority rejects Wi-Fi's argument that the Board applied a legally erroneous standard in its privity analysis. The majority affirms the Board's decision that the applicable legal standard is whether "the party in question had sufficient control over the prior proceeding." Maj. Op. at 1340. The majority also concludes that the Board did not abuse its discretion in denying Wi-Fi's request for additional discovery. Maj. Op. at 1339-40.
I depart from the opinion of my colleagues. I conclude that the Board applied an erroneous standard for establishing *1347 privity, which in turn drove its decision to deny further discovery. The Board's denial of Wi-Fi's motion for additional discovery was therefore an abuse of discretion. I would vacate the Board's final written decision with instruction that the Board permit limited, focused discovery on the § 315(b) privity issue and thereafter determine anew whether Broadcom's petition is time barred in accordance with the correct standard.
I. PRIVITY
In 2010, Wi-Fi's predecessors-in-interest, Ericsson, Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson"), filed its complaint for infringement of U.S. Patent Nos. 6,772,215 ("'215 patent"), 6,466,568 ("'568 patent"), and 6,424,625 ("'625 patent") in the United States District Court for the Eastern District of Texas against multiple defendants ("the Texas Litigation"). See Ericsson Inc. v. D-Link Sys., Inc. , No. 6:10-CV-473, 2013 WL 4046225, at *24 n.1 (E.D. Tex. Aug. 6, 2013), aff'd in part, vacated in part, rev'd in part , 773 F.3d 1201 (Fed. Cir. 2014). The case progressed to a jury trial, where the jury found that the defendants infringed the asserted claims. Broadcom, the appellee here, was not a named defendant in the Texas Litigation. In 2013, three years after the defendants in the Texas Litigation were served with complaints for infringement, Broadcom filed three separate petitions for IPR of the three patents.
During the pre-institution phase, Wi-Fi sought to bar institution of Broadcom's IPRs. Wi-Fi argued that Broadcom "is subject to the 35 U.S.C. § 315(b) bar as a privy to" the defendants of the Texas Litigation initiated three years before the filing of Broadcom's petitions. J.A. 144. Wi-Fi argued that privity could exist on multiple independent grounds: substantive legal relationship between Broadcom and the Texas Litigation defendants, Broadcom's control over the Texas Litigation, and the defendants' collusion in filing of the IPR petitions. J.A. 46, 49-50. However, the Board limited its privity analysis to a single ground. The Board repeatedly stated that in order to find privity, Wi-Fi had to show that Broadcom had control over the Texas Litigation. "To be bound [to the outcome of the Texas Litigation], in normal situations, Broadcom must have had control over the Texas Litigation ." Broadcom Corp. v. Wi-Fi One, LLC , No. IPR2013-00601, Paper No. 23, at 7 (P.T.A.B. Mar. 6, 2015) (emphasis added); J.A. 81.[1] Applying this standard, the Board rejected Wi-Fi's motion for additional discovery because Wi-Fi's evidence and arguments failed to show that "Broadcom controlled or could have controlled the Texas Litigation." J.A. 89.
Wi-Fi appeals and argues that "[t]he Board committed a critical and serious legal error" in making its § 315(b) determination by "appl[ying] a narrow and rigid legal standard that focused exclusively on whether Broadcom has a right to control the District Court Litigation." Appellant Br. at 31, 34. Wi-Fi argues that "[t]he Board's erroneous legal standard undermines *1348 both the plain text and purpose of § 315(b)." Id . at 35. The majority avoids Wi-Fi's precise argument on appeal, endorses the Board's narrow standard for proving privity under § 315(b), and affirms the Board's finding of no privity between Broadcom and the Texas Litigation defendants because "[t]here was no such showing of control in this case." Maj. Op. at 1341.
I disagree. The Board's narrow and rigid "control over the prior litigation" requirement contravenes precedent from the Supreme Court and this court, impermissibly cabins the privity inquiry into only one factor-control of the prior litigation-and ignores other relevant factors. It fails to account for the complexities of the marketplace and the infinite number of business forms and relationships that entities assume to achieve common purpose.
The term "privity" is not defined in the Leahy-Smith America Invents Act ("AIA"). I agree with the majority that Congress intended to adopt common law principles of "privy" and "real party in interest" when it drafted the AIA. Maj. Op. at 1335-36 (citing 154 Cong. Rec. S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl)). Congress did not leave to the U.S. Patent and Trademark Office's ("PTO") discretion to determine the legal standards for "privity"; it is a question well within the province of the judiciary. See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC , --- U.S. ----, 138 S.Ct. 960, 967, --- L.Ed.2d ---- (2018) (finding appellate courts should apply de novo review when "elaborating on a broad legal standard" because of " 'institutional advantages' in giving legal guidance" (quoting Salve Regina College v. Russell , 499 U.S. 225, 231-33, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) )); Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc. , 786 F.3d 960, 964 (Fed. Cir. 2015) ("Whether the Board applied the correct legal standard ... is a question of law we review de novo ."); McDonnell Douglas Corp. v. United States , 323 F.3d 1006, 1014 (Fed. Cir. 2003) (holding that "determination of legal standards is a pure issue of law" that we review de novo ).
The general definition of privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)." Privity , Black's Law Dictionary (10th ed. 2014). Generally, one is not bound by a judgment "in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee , 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). However, this rule is subject to important exceptions where the judgment would preclude a nonparty from relitigating the same claims and issues in another forum. See Taylor v. Sturgell , 553 U.S. 880, 893, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). The term "privity" is used broadly "as a way to express the conclusion that nonparty preclusion is appropriate on any ground." Id. at 894 n.8, 128 S.Ct. 2161 ; Richards v. Jefferson Cty., Ala. , 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (same); Int'l Nutrition Co. v. Horphag Research, Ltd. , 220 F.3d 1325, 1329 (Fed. Cir. 2000) (stating that the term privity "is simply a shorthand way of saying that [a] nonparty [i.e. , a party not named in a prior action] will be bound by the judgment in that action").
In a unanimous opinion, the Supreme Court in Taylor described a non-exhaustive list of six categories where each alone is sufficient to establish privity between a named party and a nonparty in litigation: (1) an agreement between the parties to be bound; (2) pre-existing substantive legal relationships between the parties; (3) adequate *1349 representation by the named party; (4) the nonparty's control of the prior litigation; (5) where the nonparty acts as a proxy for the named party to relitigate the same issues; and (6) where special statutory schemes foreclose successive litigation by the nonparty (e.g. , bankruptcy and probate). 553 U.S. at 894-95, 128 S.Ct. 2161. The Supreme Court noted that this list of six categories "is meant only to provide a framework" for considering privity, "not to establish a definitive taxonomy." Id. at 893 n.6, 128 S.Ct. 2161.
The PTO's Trial Practice Guide is consistent with Taylor. Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756 (Aug. 14, 2012). The Trial Practice Guide provides that the PTO "intends to evaluate what parties constitute 'privies' in a manner consistent with the flexible and equitable considerations established under federal caselaw." Id . at 48,759. The Trial Practice Guide adopts Taylor 's definition for privity: "[p]rivity is essentially a shorthand statement that collateral estoppel is to be applied in a given case .... The concept refers to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to justify application of the doctrine of collateral estoppel." Id . (citations omitted); see Taylor , 553 U.S. at 894 n.8, 128 S.Ct. 2161 ("The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground.").
Based on the record before the Board, at minimum three of the six Taylor grounds-the second, fourth and fifth-are implicated in this case. First, privity can be found when there is a substantive legal relationship between the parties. Taylor , 553 U.S. at 894, 128 S.Ct. 2161. For example, as this court has observed, nonparty preclusion is warranted when an indemnitor participates in defending an action brought against its indemnitee. Intel Corp. v. U.S. Int'l Trade Comm'n , 946 F.2d 821, 839 (Fed. Cir. 1991) (finding that "an indemnification agreement, in other cases, has alone been enough to find privity"); see also SpeedTrack, Inc. v. Office Depot, Inc. , No. C 07-3602 PJH, 2014 WL 1813292, at *6-7 (N.D. Cal. May 6, 2014) (ruling that in view of the indemnification obligations the manufacturer owed to its customer, the manufacturer was in privity with the customer such that claim preclusion could apply), aff'd , 791 F.3d 1317, 1324-29 (Fed. Cir. 2015). In cases involving indemnification agreements, the indemnitor operates like an insurer who indemnifies the insured-the indemnitee-and when the indemnitor has paid the entire claim to the indemnitee, he is subrogated to the rights of the indemnitee and becomes the real party in interest. See 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1546 (2d ed. 2011) (hereinafter "Wright & Miller"). In this regard, the indemnitor stands in the shoes of the indemnitee. Thus, I disagree with the majority's endorsement of the Board's finding that an indemnification provision cannot be indicative of privity or real-party-in-interest status. Maj. Op. at ---- - ----. Indemnification agreements alone may not always mandate a finding of nonparty preclusion, but their existence is strong evidence for privity and, at minimum, presents an independent basis that warrants additional discovery into the terms of these agreements and the parties' actions pursuant to the agreements.
Wi-Fi discovered that Broadcom had indemnification agreements pertaining to the infringing products with some Texas Litigation defendants during IPR. Indeed, Broadcom supplied the Texas Litigation defendants the very chipsets that formed *1350 the basis for the infringement allegations in the Texas Litigation. Broadcom does not deny the existence of the indemnification agreements, nor contest whether they pertained to the accused products. Rather, Broadcom reported in its SEC filings that it is not uncommon for Broadcom to be "required to indemnify some customers and strategic partners under our agreements if a third party alleges or if a court finds that our products or activities have infringed upon, misappropriated or misused another party's proprietary rights." J.A. 190-91. The Board acknowledged that the district court in the Texas Litigation mentioned "two indemnity agreements and an e-mail communication about indemnity." J.A. 84. Wi-Fi also alleges that Broadcom assisted defendants during the Texas Litigation, and provided analysis of the "very patents that are now the subject of Broadcom's [IPR] petitions." J.A. 45-46.
Citing Taylor , Wi-Fi argued that indemnity agreements constitute a substantive legal relationship sufficient under the second category of Taylor to establish privity in its motion for additional discovery. Wi-Fi proffered concrete evidence of a substantive legal relationship between Broadcom and the prior defendants, and its position cannot be said to be mere "speculation" or "conjecture." J.A. 90. The evidence suggests that the relationship between Broadcom and the Texas Litigation defendants went beyond typical transactions between supplier and buyer. Based on this evidence, Wi-Fi sought limited additional discovery on the terms of the indemnification agreements, but was rejected by the Board. This denial was in error. The terms of indemnity agreements between Broadcom and the Texas Litigation defendants are important to determine the relationship between Broadcom and the Texas Litigation defendants. Depending on the agreements' terms and whether Broadcom has paid claims to the defendants pursuant to the court's judgment in the Texas Litigation, the indemnification agreements would create a substantive legal relationship between Broadcom and the Texas Litigation defendants, potentially barring the PTO under § 315(b) from instituting Broadcom's IPRs. See Intel , 946 F.2d at 839 ; SpeedTrack, 2014 WL 1813292, at *6-7.
Second, privity can also be found when a nonparty "assume[d] control" over the litigation in which that judgment was rendered. Taylor , 553 U.S. at 895, 128 S.Ct. 2161 (citing Montana v. United States , 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ). The rationale for this ground of nonparty preclusion is that since the nonparty has had "the opportunity to present proofs and argument," he has already "had his day in court" even though he was not a named party to the litigation. Id . (quoting Restatement (Second) of Judgments § 39 cmt. a). To determine whether privity exists between parties, "all contacts between [the parties], direct and indirect, must be considered." Intel , 946 F.2d at 838. Although whether the nonparty exercised or could have exercised control over a party's participation in a proceeding is a "common consideration" for a privity inquiry, the PTO's Trial Practice Guide explicitly states that "[c]ourts and commentators agree, however, that there is no 'bright-line test' for determining the necessary quantity or degree of participation to qualify as a 'real party-in-interest' or 'privy' based on the control concept." 77 Fed. Reg. at 48,759 (emphases added).
The evidence before the Board shows that Broadcom was more than a bystander to the Texas Litigation. Broadcom has a corporate policy on litigation on behalf of its customers, including an undisputed contractual obligation to indemnify the Texas Litigation defendants. J.A. 84. Broadcom's SEC filings report that to protect interests *1351 of its indemnified "customers and strategic partners," Broadcom "engage[s] in litigation to ... determine the validity and scope of the proprietary rights of others, including [its] customers." J.A. 45. Wi-Fi also proffered evidence that Broadcom coordinated with the defendants in the Texas Litigation, which may have assisted Broadcom in the filing of the IPRs. J.A. 45-47, 50. In addition, Broadcom filed an amicus brief in the appeal from the Texas Litigation supporting the defendants. While the Texas Litigation was pending, Broadcom argued in another forum that the assertion of Wi-Fi's patents was anticompetitive, demonstrating that Broadcom had direct business interests implicated in the Wi-Fi patents asserted in the Texas Litigation. Thus, while the evidence so far may not be sufficient to establish the extent of control that Broadcom had in the Texas Litigation, the evidence is sufficient to warrant additional discovery concerning Broadcom's control over the Texas Litigation defendants. In my view, discovery is required for the Board to properly assess the degree of Broadcom's involvement in the Texas Litigation. See Intel , 946 F.2d at 838.
Finally, a party bound by a judgment cannot escape preclusion by relitigating the same issues through a nonparty proxy. Taylor , 553 U.S. at 895, 128 S.Ct. 2161 (recognizing that a nonparty cannot "later bring[ ] suit as the designated representative of a person who was a party to the prior adjudication"). This concept is similar to real party in interest. The typical common law expression of real party in interest indicates a party "who, according to the governing substantive law, is entitled to enforce the right." See Wright & Miller § 1543 (discussing Fed. R. Civ. P. 17 ). This notion reflects standing concepts that do not fit directly in the America Invents Act trial context because there is no standing requirement for a petitioner to file an IPR. The PTO interprets real party in interest as "the party that desires review of the patent" and "may be the petitioner itself, and/or it may be the party or parties at whose behest the petition has been filed." 77 Fed. Reg. at 48,759.
Wi-Fi contends that the Texas Litigation defendants are the real parties in interest in Broadcom's IPRs. In support, Wi-Fi alleges evidence that suggested collusion between the defendants and Broadcom in the filing of the petitions. For example, Broadcom's petitions relied on Ericsson's (Wi-Fi's predecessor-in-interest) expert report from the Texas Litigation-a report that Broadcom allegedly could only have obtained from one of the defendants. Broadcom's IPR petitions also recited the same prior art references used by the defendants in the Texas Litigation, as the Board acknowledged, again suggesting collusion between Broadcom and the defendants. Before the Board, Wi-Fi sought discovery of communications between Broadcom and the defendants relating to the filing of the IPRs. Under the facts of this case, and in view of Taylor , Wi-Fi provided the Board with sufficient evidence to support its privity allegations and the Board abused its discretion by denying Wi-Fi's request for discovery.
In face of a fact pattern that calls into question multiple Taylor categories-substantive legal relationships, control of the prior litigation, and relitigating by proxy-the Board applied a "control over the prior litigation" test for privity that is impermissibly narrow. The Board concluded that "[t]o be bound [to the outcome of the Texas Litigation], in normal situations, Broadcom must have had control over the Texas Litigation ." J.A. 81 (emphasis added). The Board's narrow application is inconsistent with Taylor and the PTO's Trial Practice Guide. By concluding "[p]aying for trial expenses pursuant to indemnity *1352 normally does not establish privity or control," the Board failed to recognize that substantive legal relationship under Taylor is a separate ground for privity from control over prior litigation, and is not merely a circumstance to establish the latter. J.A. 85. The Board cited a few cases from other circuits and district courts to support its proposition, J.A. 81-83, but these cases pre-dated Taylor and do not stand for the proposition that privity can only be satisfied if the petitioner controls the district court litigation. At most, these cases demonstrate that when a party has had control over a prior litigation, privity can be found, an outcome that is consistent with Taylor 's fourth category.
Privity, therefore, can exist in situations where a party has not had direct control over a prior litigation, as outlined by Taylor and acknowledged by the PTO. 77 Fed. Reg. at 48,759 ("There are multiple factors relevant to the question of whether a non-party may be recognized as a 'real party-in-interest' or 'privy.' " (emphasis added)). Hence, the majority reaches the incorrect conclusion that the Board's legal standard for privity analysis "is consistent with general legal principles."[2] Maj. Op. at 1336.
In deciding whether privity exists under § 315(b), the Board should start with a review of the six grounds of privity set forth in Taylor and consider all the facts and circumstances for each ground. Among the factors that the Board should consider are: (1) whether there exists a substantive legal relationship between the parties and the nature of that relationship; (2) whether the petitioner and an accused infringer in a prior litigation have worked in concert in that litigation; and (3) whether the petitioner and the accused infringer in the prior litigation have worked in concert to file the IPR petition.[3]
*1353 Substantive legal relationships may take a variety of forms, including, but not limited to, subsidiary and parent company, joint venture, preceding and succeeding owners of property, bailee and bailor, assignee and assignor, indemnitee and indemnitor, and subrogee and subrogor. See Taylor , 553 U.S. at 894, 128 S.Ct. 2161. For example, the relationship between parties may extend beyond that of typical suppliers and buyers, such that the parties are stakeholders engaged in a common enterprise. In such instances, a substantive legal relationship may exist and privity may be established. Further, a petitioner's participation in the prior litigation can take a variety of forms, such as: whether the petitioner participated, directly or indirectly, in the prior litigation and the extent of the participation; whether the petitioner controlled, or had opportunity to control the prior litigation; and whether the petitioner provided funding for or was obliged to fund the prior litigation. Similarly, an accused district court litigation infringer's participation in the filing of the IPR petition via a nonparty proxy, such as whether the accused infringer participated, controlled, or funded the filing of the IPR petition, directly or indirectly, could lead to a finding that the petitioner is in privity with the accused infringer.
II. DISCOVERY
Relying on an erroneous standard of privity, the Board abused its discretion when it denied Wi-Fi's motion for additional discovery. The Board gave two reasons for denying Wi-Fi's motion for additional discovery. First, the Board cautioned that "without some evidence of actual control of a trial," the discovery could "spiral into what amounts to a separate trial that involves a myriad of considerations." J.A. 89. The Board also suggested that a restrictive standard for additional discovery is required, or anything less would "impact[ ] the PTAB's mandate to expedite the proceedings and provide limited discovery in the interests of justice." Id .
The Board's first ground fails because the record of this case amply supports granting Wi-Fi's motion for additional discovery. First, Wi-Fi's request amounts to more than a "mere possibility" or "mere allegation that something useful [to the proceeding] will be found." J.A. 80. Wi-Fi has asserted the existence of concrete evidence, which Broadcom does not dispute. Second, Wi-Fi's discovery request was limited in scope and focused only on the privity claims. And third, the requested discovery, if proven to be true, would likely establish privity between Broadcom and the Texas Litigation defendants.
The inquiry into privity is highly fact-dependent, and the Board should not be overly restrictive in granting discovery motions. See Intel , 946 F.2d at 838 (holding that "all contacts between [the parties], direct and indirect, must be considered"). As discussed above, each Taylor ground alone may be sufficient to establish privity and thus bar the institution of the IPR. Privity can also be inferred if circumstantial evidence supports collusion or a substantive legal relationship between the parties. This is particularly relevant because evidence of privity often involves confidential commercial agreements that are not publically available.[4] Parties often take steps to conceal their relationship and *1354 in so doing hide the identity of the actual stakeholder(s). Additional discovery should only be denied when a patentee fails to concretely identify evidence implicating at least one Taylor factor, or when the allegation of privity, if taken as true, cannot establish a single Taylor factor.
Wi-Fi's motion for additional discovery should be granted because the record shows that the relationship between Broadcom and the Texas Litigation defendants went beyond a typical supplier/buyer relationship; Wi-Fi alleged factual evidence to support its discovery request; and most of Wi-Fi's requested evidence, such as the indemnification agreements (the existence of which is not disputed by Broadcom) are easy to produce and cannot be otherwise obtained. When viewed in aggregate, Wi-Fi's showing established a strong basis for allowing discovery.[5]
The Board's expediency ground also fails. The Board notes that given the statutory deadlines for issuing final written decisions in IPRs, the Board "must be conservative in authorizing additional discovery." J.A. 80. However, the desire to expedite the proceedings cannot come at the cost of justice. Sackett v. EPA , 566 U.S. 120, 130, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012) (repudiating "the principle that efficiency of regulation conquers all"). Importantly, a fundamental statutory purpose of § 315(b) is to "govern[ ] the relation of IPRs to other proceedings or actions, including actions taken in district court," and to "set[ ] limits on the [PTO] Director's statutory authority to institute, balancing various public interests." Wi-Fi One , 878 F.3d at 1374.
As a threshold issue prior to institution, time bar determinations are vital because IPRs can deprive a patentee of significant property rights though the cancellation of patents, as happened in this case. Although the statute imposes no standing requirement on who may file a petition, § 315(b) attests that the doors to IPR institution are not open to every would-be petitioner. As this court noted en banc , § 315(b) protects both the integrity and efficiency of the IPR process by giving the Director of the PTO an important tool to refuse institution. Wi-Fi One , 878 F.3d at 1374. The restrictive standard adopted by the majority dulls that tool and defeats the purpose of § 315(b). For these reasons, I respectfully dissent.

See also J.A. 85 ("The totality of the evidence fails to amount to more than a 'mere possibility' that Broadcom controlled, or could have controlled, the Texas litigation .") (emphasis added); J.A. 87 ("[T]he IPR filings fail to show control over the Texas Litigation . The evidence does not amount to more than speculation that any of Broadcom's activity constitutes evidence of collusion with the D-Link defendants in the Texas Litigation in a manner that would bind Broadcom to the outcome thereof.") (emphasis added); J.A. 89 ("The evidence and arguments fail to show that the sought-after discovery would have more than a mere possibility of producing useful privity information, i.e., that Broadcom controlled or could have controlled the Texas Litigation .") (emphasis added).

The majority justifies its narrow holding on grounds that Wi-Fi did not raise other Taylor grounds before the Board and that Wi-Fi limited its argument to the "control over the prior litigation" ground. Maj. Op. at 1338 n.3. This is incorrect. In its motion for additional discovery, Wi-Fi argued that Taylor is the legal standard and it sets out the six categories for determining whether a nonparty to a suit is bound by a prior judgment. J.A. 49. Wi-Fi explicitly argued that privity could found on multiple grounds: substantive legal relationships based on indemnification agreements, Broadcom's control over the Texas Litigation, and the defendants' collusion in filing of the IPR petitions. J.A. 46, 49-50. For example, Wi-Fi argued that "[o]ne [Taylor ] category asks whether the nonparty maintains a 'substantive legal relationship' with a party in suit" and that "[t]he weight of authority strongly supports that an indemnity agreement constitutes a substantive legal relationship sufficient to establish privity." J.A. 49, 50. Wi-Fi repeats the allegation that the Board applied an erroneous legal standard in the instant appeal. See Appellant Br. at 31. It is well-established that a litigant has a "right to have all issues fully considered and ruled on by the appellate court." Bernklau v. Principi , 291 F.3d 795, 801 (Fed. Cir. 2002) (citing United States v. Garza , 165 F.3d 312, 314 (5th Cir. 1999) ). Although this does not equate to a right to a full written opinion on every issue raised, this court should not avoid addressing the very question on appeal: what is the legal standard for establishing that a petition is time barred under § 315(b) ? This is particularly true where, as here, we review for the first time the legal standard for privity under § 315(b), a question that naturally rises from our en banc decision holding that this court has jurisdiction to review § 315(b) determinations. Wi-Fi One , 878 F.3d at 1375.

The use of "prior litigation" does not imply that the prior district court action must be resolved or reach a judgment for the purpose of the time bar under § 315(b). Section 315(b) states that "[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent ." 35 U.S.C. § 315(b) (emphasis added). Once a complaint of infringement is served, the petitioner, real party in interest, or privy of the petitioner has a statutory one year period to file an IPR from the date of service. Nothing in § 315(b) indicates that the outcome of the district court litigation affects the time bar determinations. The time bar applies regardless if the prior litigation is still ongoing at the end of the one year period, or if the parties settle before that date.

Broadcom and the Texas Litigation defendants re-fused to waive confidentiality with regard to the indemnification agreements before the Board. J.A. 51.

Wi-Fi sought to discover contracts between the parties, especially the terms of the indemnification agreements, records of invoices and payments between them pursuant to the indemnification agreements, and communications relating solely to the Texas Litigation and the IPRs. The Board may limit the scope of additional discovery.